UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRON WORKERS' LOCAL 25            Case No. 08-13074
PENSION FUND, et al.,

                                    HON. SEAN F. COX
      Plaintiff,                    United States District Court
v.

SOVA STEEL, INC. and ALEX
M. SOVA,

      Defendants.
_____/

OPINION & ORDER GRANTING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT AND TO AMEND COMPLAINT [Doc. Nos. 14, 17, 20]

Plaintiffs Iron Workers' Local 25 Pension Fund, et al. ("the Plaintiffs") filed this action against Defendants Sova Steel, Inc. ("Sova Steel") and Alex M. Sova ("Sova") on July 16, 2008, seeking recoupment of pension funds claimed to be owed to them by Sova Steel. The Defendants filed a counterclaim against the Plaintiffs on August 27, 2008. The matter is currently before the Court on the Plaintiffs' motions for summary judgment [Doc. Nos. 14, 17] and the Plaintiffs' motion to amend complaint [Doc. No. 20]. The parties have fully briefed the issues, and a hearing was held on October 21, 2009. For the reasons below, the Court **GRANTS** all of Plaintiffs' motions [Doc. Nos. 14, 17, 20].

BACKGROUND

The Plaintiffs are several trust funds established under and administered pursuant to Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186; and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, with administrative offices located in Novi, Michigan. Defendant Sova Steel is a Michigan Corporation that has offices and conducts

1

business in the State of Michigan.  Defendant Sova is the sole owner of Sova Steel, and is responsible for running the day-to-day operations of Sova Steel.

The Plaintiffs were established pursuant to a Collective Bargaining Agreement ("CBA") between Local Union No. 25, International Association of Bridge, Sova Steel and Ornamental Iron Workers, AFL-CIO ("the Union") and certain employers of members of the Union, including Sova Steel.  Under the CBA, to which Sova Steel is a signatory, Sova Steel agreed to pay employee fringe benefit contributions to the Plaintiffs for each employee employed by Sova Steel covered by the CBA.

Pursuant to the CBA, Sova Steel was required to make fringe benefit contributions no later than the 26th of each month following the month in which the hours were worked, and those contributions became vested assets of the Plaintiffs' plans when due.

Also pursuant to the CBA, the Plaintiffs are entitled to conduct routine audits of Sova Steel's books to verify that contributions have been paid as required.  One such audit was conducted completed covering the time period of January 1999 through August 2008.  That indicated a balance owed in employee benefit contributions of $79,860.51, and liquidated damages in the amount of $17,845.18, for a total of $97,705.69 [*See* Pl.'s Exs. D, E, Doc. No. 14].

Defendant Sova indicated that he disagreed with the audit, but at his deposition could not give a basis for his disagreement.  Sova indicated that Mark Weisberg ("Weisberg"), Sova Steel's Controller, could provide the basis for Sova Steel's disputes with the audit. [*See* Sova Dep., Pl.'s Ex. C, Doc. No. 14, pp.25-27].

At his deposition, Weisberg produced no documents that would establish that the audit

was incorrect. Further, Weisberg could not point to any document that would dispute the audit. [*See* Weisberg Dep., Pl.'s Ex. H, Doc. No. 14 pp.30-37, 39-42].

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c), *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in its favor. *Matsushita Elec. Inc. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Pursuant to FED. R. CIV. P. 15, "a party may amend its pleadings only with the court's leave. *The court should freely give leave where justice so requires*." FED. R. CIV. P. 15(a)(2) (emphasis added).

## ANALYSIS

I. Summary Judgment on Plaintiffs' Complaint

As no genuine issues of material fact remain regarding 1) Sova Steel's liability for the claimed benefit contribution funds; and 2) Alex Sova's personal liability for those unpaid benefit contribution funds, the Court **GRANTS** the Plaintiff's motion [Doc. No. 14] for the reasons described below.

A. Sova Steel is Liable For the Unpaid Funds As a Matter of Law.

The Defendants do not contest that Sova Steel is an "employer" as defined under both ERISA and the LMRA. Under ERISA:

Every employer who is obligated to make contributions to a multi-employer plan

3

> under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan, or such agreement.

29 U.S.C. § 1145. As the Plaintiffs are third-party beneficiaries of the CBA, they have the right to enforce the terms of the CBA against the Defendants. *See Central States, Southeast and Southwest Areas Pension Fund v. Behnke*, 883 F.2d 454, 460 (6th Cir. 1989).

The statutory basis for the Defendants to submit to an audit is found in 29 U.S.C. § 1059, which provides, in pertinent part:

> Except as provided by Paragraph 2, every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.

29 U.S.C. § 1059(a)(1). The Sixth Circuit, in *Michigan Labors Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 962 (6th Cir. 1994), held that this provision of ERISA imposes the following obligations upon employers:

> [Section] 1059 imposes a clear duty on an employer to maintain adequate records. At our sole published opinion dealing with this Section, we stated that §1059 imposes a duty of responsibility in record keeping on employers with respect to all employees who are participants in an employee benefit plan.

*Grimaldi*, 30 F.3d at 695 (internal quotations and citations omitted). The Sixth Circuit in *Grimaldi* further adopted a construction of section 1059 which concluded that, where employers do not maintain adequate records, "the burden thus shift[s] to [the employer] to prove what work was covered and what was not covered." *Id*. at 696.

In this case, an audit was completed on November 10, 2008 covering the time period January 1999 through August 2008, which indicated a benefit contributions shortfall of $79,860.51, and liquidated damages in the amount of $17,845.18, for a total balance of

4

$97,705.69. [*See* Pl.'s Exs. D, E, Doc. No. 14]. Further, there is a current delinquency in the amount of $33,965.95, which the Defendants admit is owed. [Pl.'s Ex. C, pp.17, 19-20, 26-27].

During the depositions of both Alex Sova and Mark Weisberg, neither individual could give specific reasons to dispute the audit's results. [*See* Sova Dep., Pl.'s Ex. C, Doc. No. 14, pp.25-27; Weisberg Dep., Pl.'s Ex. H, Doc. No. 14 pp.30-37, 39-42]. However, in response to Plaintiff's Motion for Summary Judgment, the Defendants attach an *unsigned* affidavit from Mark Weisberg that purports to explain discrepancies in the audit's calculations [*See* Weisberg Affidavit, Def.'s Ex. A, Doc. No. 24]. The Court considers each of these alleged discrepancies in turn.

### 1. Paragraph 11(a) of Weisberg's Unsigned Affidavit.

In paragraph 11(a) of Weisberg's unsigned affidavit, Weisberg argues that on November 18, 2003 he wrote a letter to the Plaintiffs objecting to the inclusion of extra hours allegedly worked by several employees in the 2000 fiscal year. [Weisberg Affidavit, Def.'s Ex. A, Doc. No. 24, ¶11(a)]. Rather than supply the Court with the *actual* business records to prove this discrepancy, however, Exhibit 1 to Weisberg's affidavit merely attaches the actual letter sent to the Plaintiffs. No actual records from Sova Steel have been provided to the Court to prove this discrepancy. Thus, under *Grimaldi*, the Court holds that Sova Steel has not met its burden to prove these claimed discrepancies in the audit.

### 2. Paragraphs 11(b) and (c) of Weisberg's Unsigned Affidavit.

In paragraphs 11(b) and (c) of Weisberg's unsigned affidavit, Weisberg argues that hours worked for two employees - Floyd Lee and an individual only identified as "Leclair" - were incorrectly calculated. [Weisberg Affidavit, Def.'s Ex. A, Doc. No. 24, ¶¶11(b)-(c)]. For

5

purposes of this motion, the Plaintiffs do not contest this claimed reduction. [Pl.'s Reply Br., Doc. No. 29, p.4]. Therefore, the Court discounts the total shortfall sought by the Plaintiffs in this action by the total of $1,067.41 attributable to Lee and Leclair.

### 3. Paragraphs 11(d), (f) and (g) of Weisberg's Unsigned Affidavit.

In paragraphs 11(d), (f) and (g) of Weisberg's unsigned affidavit, Weisberg argues that hours worked for two employees - Nick Benedict and Chris Maynard - were incorrectly calculated. [Weisberg Affidavit, Def.'s Ex. A, Doc. No. 24, ¶¶11(d), (f)-(g)]. As noted by the Plaintiffs in their reply brief, however, these claimed discrepancies are simply not reflected in the audit summary. [*See* Pl.'s Reply, Doc. No. 29, p.4; Audit Summary, Pl.'s Ex. 4, Doc. No. 29]. Therefore, under *Grimaldi* the Court holds that Sova Steel has not met its burden to prove these claimed discrepancies in the audit.

### 4. Paragraph 11(e) of Weisberg's Unsigned Affidavit.

In paragraph 11(e) of Weisberg's unsigned affidavit, Weisberg argues that benefits for one employee - Robert Tipton - were actually paid to Local Union 112 in Illinois, and that Sova Steel was being double-charged by the Plaintiffs in requesting benefits pursuant to this audit. [Weisberg Affidavit, Def.'s Ex. A, Doc. No. 24, ¶11(e)]. The Defendants, however, provide no documents as required by *Grimaldi* to support this position. Therefore, under *Grimaldi* the Court holds that Sova Steel has not met its burden to prove these claimed discrepancies in the audit.

In conclusion, the Court finds that, under *Grimaldi*, the Defendants have come forward with inadequate records to dispute the validity of the November 10, 2008 audit, with the exception to the agreed-upon reduction of $1,067.41 for employees Lee and Leclair. Further, the

6

Defendants do not dispute that there is a current delinquency in the amount of $33,965.95 which accrued after the November 10, 2009 audit. As such, Court **GRANTS** the Plaintiff's Motion for Summary Judgment [Doc. No. 14] against Sova Steel in the amount of $130,604.23, representing the total amount of the shortfall found in the November 10, 2008 audit, minus the $1,067.41 credit, plus the $33,965.95 current delinquency.

        B.  Alex Sova is Personally Liable for the Unpaid Funds as a Matter of Law.

The Plaintiffs argue that Sova should be held personally liable for the unpaid fund contributions to the Plaintiffs, as he is a fiduciary with discretionary authority over those plan assets. [Pl.'s Br., Doc. No. 14, p.8]. In their response brief, the Defendants do not contest personal liability on Sova's behalf, or that Sova is a fiduciary over the plan assets. For the reasons below, the Court **GRANTS** the Plaintiffs' motion for summary judgment [Doc. No. 14] on this argument, and holds Defendant Alex Sova personally liable for all funds owed by Sova Steel.

Whether an individual is a fiduciary under ERISA is a legal conclusion for the Court. *Ackers v. Palmers*, 71 F.3d 226, 230 (6th Cir. 1995). In *Brock v. Henderson*, 840 F.3d 339 (6th Cir. 1988), the Sixth Circuit defined a "fiduciary" as follows:

> . . .[A] fiduciary should be defined not only by reference to particular titles, such as Trustee, but also by reference to the authority which a particular person has or exercises over employee benefit plans. *The ERISA statute provides that a person is a fiduciary when he exercises any discretionary authority or discretionary control respecting. . . management or disposition of its assets*.

*Brock*, 840 F.3d at 342 (internal citations omitted)(emphasis added). This holding comports with the ERISA statute, which states that a person is a fiduciary with respect to a plan "to the extent. . . he exercises any discretionary authority or discretionary control respecting management of such

7

plans or exercises any authority or control respecting management or disposition of its assets."

29 U.S.C. § 1002(21)(A).

The Department of Labor has issued regulations stating that, for purposes of ERISA liability, amounts withheld from a participant's wages are a plan asset:

> **Definition of "plan assets - participant contributions** - (a) General Rule. For purposes of [ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102(a).

In support of their argument that Sova was a fiduciary, the Plaintiffs argue that "Defendant Alex Sova is the individual who made all determinations of what was going to be paid, including what employee benefit contributions were going to be paid." [Pl.'s Br., Doc. No. 14, p.12]. Sova's deposition testimony supports this argument:

> Q: Are you the person, am I talking to the right person, are you the one who makes the decisions I'm either going to pay that or I'm not?
> A: Yes.
> Q: Is there anyone else at Sova that makes that decision?
> A: No.
> Q: Does [Sova Comptroller] Mark Weisberg have the authority or power to make that decision?
> A: No.
> Q: That rests with you and you alone?
> A: Yes.

[Sova Dep., Pl.'s Ex. C, Doc. No. 14, pp.17-18].

The Defendants do not offer any argument or direct the Court to any evidence indicating that Alex Sova is not a fiduciary, or that he did not breach his fiduciary duties.

In the instant case, Sova has admitted that he was the only individual who exercised

discretionary authority over plan assets. Further, as discussed *supra*, Sova Steel is liable for shortfalls in defined benefit contributions. Under *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Elrection, Inc.*, 352 F.Supp.2d 794, 804 (E.D. Mich. 2004), therefore, the Plaintiffs are entitled to summary judgment with respect to Defendant Alex Sova's breach of fiduciary duty.

For these reasons, the Court **GRANTS** the Plaintiffs' Motion for Summary Judgment [Doc. No. 14] against both Sova Steel and Alex Sova.

II. Summary Judgment on the Defendants' Counterclaim

In their Counterclaim [Doc. No. 6], the Defendants allege that the Plaintiffs owe Sova Steel "at least $109,340.20 as a credit or refund as a result of overpayments to the Funds." [Def.'s Answer & Counterclaim, Doc. No. 6, p.5, ¶4]. The Plaintiffs argue that this claim is without merit, and furthermore "is simply an attempt to divert this Honorable Court's attention away from the Defendants' own inappropriate conduct. . . ." [Pl.'s Br., Doc. No. 17, p.1]. As Sova Steel's Counterclaim seeks restitution of funds beyond Michigan's six-year statute of limiations, however, the Court **GRANTS** the Plaintiffs' Motion for Summary Judgment [Doc. No. 17] on the Defendants' Counterclaim.

As the Defendants are seeking a return of alleged overpayments in fund contributions, 29 U.S.C. § 1103 governs:

> In the case of a contribution, or a payment of withdrawal liability. . .
> \*\*\*
> (ii) If such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact or law. . ., paragraph (1) shall not prohibit the return of such contribution or payment to the employer *within 6 months after the plan administrator determines that the contribution was made by such a mistake*.

9

29 U.S.C. § 1103(2)(A)(ii) (emphasis added). The Sixth Circuit has interpreted this provision not to require that overpayments be repaid, but rather that a fund may in its discretion repay overpayments without violating federal law. *See, e.g., Whitworth Bros. Storage Co. v Central States, Southeast and Southeast Areas Pension Fund*, 982 F.2d 1006, 1011 (6th Cir. 1993). While § 1103 itself does not create a cause of action, courts have overwhelmingly recognized a federal common law cause of action for restitution based upon § 1103. *See, e.g., Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 236 (6th Cir. 1986).

To prevail on a claim for restitution of mistakenly paid contributions to a fund pursuant to § 1103, the employer must prove that the fund's refund denial is "arbitrary and capricious as measured by equitable principles." *B&B Electric Co., Inc. v. Electrical Workers Local Union No. 369 Retirement Fund*, 249 F.Supp.2d 865, 868 (W.D. Ky. 2003) (quoting *Whitworth Bros. Storage, supra*).

Even assuming *arguendo* that the Defendants could prevail under this weighty burden and prove that the Plaintiffs were arbitrary and capricious in their refusal to refund plan contribution overpayments, the Defendants bring this suit outside Michigan law's six-year statute of limitations period. The Defendants do not dispute that their counterclaim, filed on August 27, 2008, seeks restitution of alleged overpayments from the 2000, 2001, and early 2002 periods.

An employee benefit fund may utilize an applicable state limitations period as an equitable basis for denying overpayment claims. *Central States, Southeast and Southwest Areas Pension Fund v. Gelock Transfer Line, Inc.*, 1993 U.S. Dist. LEXIS 18867 (W.D. Mich. Dec. 9,

1993). Under Michigan law, a claim for restitution must be brought within six years. M.C.L. § 600.5807(8). The Western District of Michigan upheld the application of a similar statute of limitations[1] in *Gelock*, noting that the pension funds' argument was "compelling" that pension funds "be entitled to some level of certainty that stale claims for return of overpayments will not be made such that it can close its books at some point in time." *Gelock* at *11.

In the instant case, by the time the Defendants filed their counterclaim on August 27, 2008, Michigan's six-year statute of limitations for a restitution action had run.

Rather than make an argument that their claims do not run afoul of Michigan's six-year statute of limitations, Defendant's response brief instead makes an argument regarding the equities of the situation: "justice demands reciprocal limits; recovery of underpayments and refund of overpayments should be possible for an equal period." [Def.'s Br., Doc. No. 23, p.3, citing *Jamail, Inc. v. Carpenter's Dist. Council of Houston*, 954 F.2d 299 (5th Cir. 1992)]. Aside from the fact that *Jamail* is merely persuasive, rather than binding, upon this Court, the Fifth Circuit in *Jamail* referred to circumstances not at issue in this lawsuit as being good reason to apply equity in tolling a statute of limitations: extortion by pension fund trustees. *Jamail*, 954 F.2d at 305.

This case does not raise such concerns. Here, by contrast, Sova Steel had an ongoing dispute with the Plaintiffs for *years* about alleged overpayments before Sova Steel decided to file this lawsuit. No equitable reason exists in this matter to disregard Michigan's six-year statute of limitations under M.C.L. § 600.5807(8). For that reason, Plaintiff's Motion for Summary Judgment [Doc. No. 17] on Defendant's counterclaim is **GRANTED**.

---

[1] *Gelock* applied Illinois' ten-year statute of limitations for a restitution action.

### III. Plaintiffs' Motion to Amend Complaint

The Plaintiffs also bring a Motion to Amend Complaint [Doc. No. 20], in which they seek to add two new corporate entities, Sova Group, LLC ("Sova Group"), and SSI Contracting, LLC ("SSI Contracting"), as defendants to this action. Plaintiffs also seek to add another count of liability against Alex Sova under a corporate veil-piercing theory. [*See* Pl.'s Proposed First Amended Complaint, Pl.'s Ex. A, Doc. No. 20]. For the reasons that follow, the Court **GRANTS** the Plaintiffs' Motion to Amend Complaint [Doc. No. 20].

Again, Sova is the sole owner and shareholder of Sova Steel [Sova Dep., Pl.'s Ex. E, Doc. No. 20, pp.6-7]. Sova Group, formed by Sova in 2003, is also involved in steel erection work, and both Sova Steel and Sova Group lease the same equipment and are located in the same management office with the same management employees. *Id*. at pp.6-10. Both entities bid on steel erection projects, but Sova Steel only bids on jobs requiring union labor, while Sova Group bids on projects not requiring union labor. *Id*. at pp.10-12.

Though he did not disclose his interest in SSI Contracting during his deposition [*See* Sova Dep., Pl.'s Ex. E, Doc. No. 20, pp.6, 10-12], the corporate records from the State of Michigan show that Sova is actually a member and president of SSI Contracting. [*See* Pl.'s Ex. H, Doc. No. 20]. Records from the State of Michigan also show that SSI Contracting used to be named Sova Steel Erectors, LLC, but that the name was later changed to SSI Contracting.

Mark Weisberg, controller for Sova Group, testified at deposition that SSI Contracting pays the employees of Sova Steel, and that work is subcontracted from SSI Contracting to Sova Steel. [Weisberg Dep., Pl.'s Ex. G, Doc. No. 20, pp.13-15]. Thus, Alex Sova owns and operates Sova Steel, Sova Group, and SSI Contracting. Sova Steel obtains the projects and pays the

fringe benefits to Plaintiffs' participants, albeit through SSI Contracting as a conduit.

Motions for leave to amend are governed by FED.R.CIV.P. 15(a), which states in pertinent part that "a party may amend its pleadings only with the court's leave. *The court should freely give leave where justice so requires*." Fed.R.Civ.P. 15(a)(2) (emphasis added). The Sixth Circuit and the Supreme Court have laid out several factors to consider in determining whether to permit an amendment, including:

> . . .[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. . . .

*Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Sixth Circuit has also emphasized that courts should be mindful of "some significant showing of prejudice to the opponent" as a major consideration in evaluating a motion to amend. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986).

The "alter ego doctrine" is commonly used in labor cases to where, as here, an employer is alleged to be engaged in "double-breasted" operations "to determine whether two or more coexisting employers performing the same work are in fact one business, separated only in form." *Wilson v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 83 F.3d 747, 759 (6th Cir. 1996).

In the instant case, there is evidence to suggest that Sova was operating at least two steel erection entities: Sova Steel and Sova Group, and that these entities both bid the same type of work, have the same contractors, and work out of the same location with the same or similar management personnel. Further, Sova is involved with SSI Contracting as its president, and SSI Contracting handles the payroll obligations for Sova Group. Given these facts, the Court finds

that the Plaintiffs' motion to amend is not futile.

Further, the Court finds no bad faith or unreasonable delay on the part of the Plaintiffs in bringing this motion. The Plaintiffs only became aware of the existence of Sova Group and SSI Contracting after depositions of the Defendants' officers were taken on May 14, 2009, and the instant motion was brought within approximately thirty days after that time. Finally, the Defendants have not shown any prejudice to Sova Group or SSI Contracting that would arise from the Court's granting this motion. For these reasons, the Court **GRANTS** the Plaintiff's Motion to Amend Complaint [Doc. No. 20].

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's Motions for Summary Judgment [Doc. Nos. 14, 17], and **GRANT**S the Plaintiff's Motion to Amend Complaint [Doc. No. 20]. Plaintiffs are **ORDERED** to prepare an updated judgment calculating interest and penalties up to the present date.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: November 18, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 18, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager